# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Case No.: 2:10-CR-247-WKW |
| ) | |
| JOHN EARLY DAVIS    ) | |

## SENTENCING MEMORANDUM

**COMES NOW** the Defendant, **JOHN EARLY DAVIS**, through Undersigned Counsel, Donnie W. Bethel, and files this Sentencing Memorandum to assist the Court in determining an appropriate sentence in this case.

1.  As a young child, John Davis grew up in a home with a violent, drug-addicted father.[1] His parents divorced when Mr. Davis was eight or nine years old, and for the remainder of his upbringing he lived in a home without a father. At that moment in his life, Mr. Davis immediately became an at-risk juvenile; arguably, the single greatest factor contributing to delinquency among young men is living in a home without a father. *See* Anderson, Amy L., *"Individual and Contextual Influences on Delinquency: the Role of the Single-Parent Family."* Journal of Criminal Justice 30 (November 2002): 575-587. Not surprisingly, Mr. Davis received his first criminal conviction while still a teenager. Children in single-parent homes headed by a female are also much more likely to abuse alcohol and drugs. Mr. Davis began using marijuana at the

---

[1] Presentence Investigation Report (PSR), paragraph 55.

tender age of only 11 and began drinking alcohol at 14.[2] He descended into the maelstrom of serious drug abuse at the age of 22 when he began using methamphetamine; Mr. Davis became involved in the illegal drug trade primarily to fund his own drug habit.

3.   Mr. Davis's life continued to spiral downward until he was arrested in this case last October 12th.  Since that day nearly 10 months ago, Mr. Davis has done everything he can to turn his life around.  He began cooperating with government agents immediately upon his arrest; he has continued to cooperate and provide those agents with valuable information right up to the present.  Mr. Davis has been on pretrial release for the past eight months, without incident.  He has successfully completed a drug treatment regimen at the Chemical Addictions Program.  He has maintained gainful employment since November of 2010.  In short, Mr. Davis has done everything he possibly can to demonstrate to the Court that he can be rehabilitated and become a productive member of society.  So, the question for the Court is, how long should Mr. Davis remain locked behind bars before he has the opportunity to become that productive member of society?

4.   As just mentioned, Mr. Davis began cooperating with the authorities immediately upon his arrest. Such behavior is laudable and should be encouraged.  However, because Mr. Davis began cooperating before consulting counsel, any and all admissions that he made concerning his own drug activity can–and have been–used against him, much to his detriment. Ironically, had he initially 'lawyered up' and then cooperated pursuant to a proffer

---

[2] PSR, paragraph 61.

agreement, Mr. Davis would actually be facing a lower Guidelines sentence. His base offense level of 32 is based on a drug quantity of about one ounce of ice methamphetamine, plus 1,056 grams of a mixture containing methamphetamine.[3] Of the 1,056 grams of methamphetamine, approximately 908 grams is attributable directly to statements that Mr. Davis made to law enforcement agents before he had a proffer agreement in place. If this quantity of methamphetamine had instead been disclosed during a proffer debriefing, it could not be used against him; his base would be 30, rather than 32.[4] His total offense level would be 27, rather than 29, and his Guidelines range would be 120 to 150 months, rather than 140 to 175 months. In other words, by actively cooperating with agents at the earliest possible moment–behavior that society should seek to encourage–Mr. Davis has, in fact, suffered a substantial penalty. This Court should take that fact into consideration and vary downward by two levels in order to right this wrong.

5.   Even if the Court were to vary downward two levels for the reason just noted, and taking into consideration that the Government has moved for a four-level downward departure for substantial assistance, Mr. Davis's Guidelines Range would still be 84 to 105 months–seven to nearly nine years. The Court must add to that, however, another five years because Mr. Davis also possessed a pistol at the time he possessed methamphetamine. With no variance, Mr. Davis faces a total sentence of nearly 13 years and four months to 15 years

---

[3] PSR, paragraph 29.

[4] The total marijuana-equivalent drug quantity would be about 778 kilograms, rather than the 2,679 kilograms calculated in the PSR.

and five months. Even with a two-level variance, Mr. Davis would still face a total sentence of 12 to nearly 14 years–still a very, very long time for a first drug-trafficking offense.

6.	The statutory, mandatory-minimum sentence to which this Court can sentence Mr. Davis is a total sentence of 10 years–an entire decade. If one stops to ponder for a moment some of the major world events that have transpired over the last 10 years–the terrorist attacks on the World Trade Center and the invasion of Afghanistan in 2001, the invasion of Iraq in 2003, the Indonesian tsunami in 2004, Hurricane Katrina in 2005, the worldwide financial crises in 2008 and 2009, the Haitian earthquake in 2010–one begins to understand that 10 years is a very long time indeed to spend locked away in prison. In light of Mr. Davis's childhood, his extensive cooperation in this case, his exemplary post-offense rehabilitation and the fact that this is his first drug-trafficking conviction, ten years is more than sufficient, but not greater than necessary, to satisfy all the sentencing factors set forth in 18 U.S.C. § 3553(a).

**WHEREFORE**, Mr. Davis respectfully requests that this Court sentence him to the statutorily-required minimum sentence of 10 years in prison.

Dated this 29th day of August, 2011.

                                    Respectfully submitted,

                                    /s/ Donnie W. Bethel
                                    DONNIE W. BETHEL
                                    Assistant Federal Defender
                                    817 South Court Street
                                    Montgomery, Alabama 36104

        Phone: (334) 834-2099
        Fax: (334) 834-0353
        E-mail:don_bethel@fd.org
        IN Bar Code: 14773-49

# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No.: 2:10-CR-247-WKW** |
| ) | |
| **JOHN EARLY DAVIS** ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        Respectfully submitted,

        /s/ Donnie W. Bethel
        DONNIE W. BETHEL
        Assistant Federal Defender
        817 South Court Street
        Montgomery, Alabama 36104
        Phone: (334) 834-2099
        Fax: (334) 834-0353
        E-mail: don_bethel@fd.org
        IN Bar Code: 14773-49